Good morning, Your Honors. May it please the Court, Philip Trevino on behalf of the appellant, Mr. Berry. I'd like to start, if I may, by addressing the Court to a pinpoint reference in the pre-sentence report. The opening brief discussed this, but I apologize, I neglected to give the citation. At paragraph 118 of the PSI is where the probation officer mentions that Mr. Berry has previously been diagnosed as bipolar. And then, of course, in the probation officer's evaluation and recommendation, the point is picked up again with the probation officer mentioning that Mr. Berry has been treated for decades for bipolar. So although I understand Dr. Farristein's report concluded he didn't have the affliction, in fact, that's not true. The record is... Do you have the affliction and still be competent to represent yourself at trial? Absolutely, of course. We're not making a claim that he was mentally incompetent to represent himself. I'm simply presenting to the Court the context behind which the decision ultimately as to whether he was making an unequivocal request needs to be viewed. And this Court's jurisprudence very clearly, repeatedly makes the point. In Gerritsen, in Mendez-Sanchez, in Erskine, in others' cases, this Court has repeatedly said it's the full record before the Court that needs to be considered in making the decision. But, counsel, you cited Ferretta, Indiana v. Edwards, which requires a pro se defendant to be competent, but your brief argument focuses on the equivocal nature of Mr. Berry's argument. We're not arguing that, Your Honor. That's very clearly not before this Court. It's my assessment, and I concede, that he was competent. I don't quarrel with any of that. I mentioned Indiana simply to make a distinction, to draw the line that we are focused on the Ferretta basis of the claim. But he may be competent and still have serious mental health impairment. And it's that mental health impairment that, if I may suggest to the Court, bears heavily on whether or not he really was unequivocal in making a request to go pro se. And Judge Fischer had had virtually a plethora of interactions with this man and observed repeatedly, over and over and over, how equivocal he was. And I'm sure this Court has already seen in the records before it how his recitals, requests, fluctuate wildly. And I do understand that in that limited portion of the proceeding that the government is heavily relying on on April 22nd, it seems as if he's making a clear request to go pro se. But only ten minutes before, Judge Fischer had made a huge recital on the record and specifically incorporated all of the previous proceedings, comments on how extensively she has had the opportunity to interact directly with the defendant personally, and that he has not been unequivocal. But isn't a defendant permitted to change his mind? Of course he is. But this man changed his mind literally second by second. And the Court knew it. And the record before the lower court and now before this Court shows it very clearly. So there may be one crystalline moment, Your Honor, in which he does make that request. But, Judge Nelson, I have to suggest very respectfully, consistent with this Court's prior decisions and that prior record, that wasn't an actual legitimate request. It doesn't pass muster. It shouldn't pass muster. The ---- Are you referring to the transcript of the August 23 hearing? No, Your Honor. That's ---- That was the eve of trial, right, when she said, so I'm going to ask you one last time, do you want me to appoint counsel for you? And he said, no, Your Honor. That's pretty unequivocal. You're saying we have to look at that in the context of the whole prior proceedings? The focus must be on the time the request is made and granted to allow him to go pro se. This Court's jurisprudence, Apone among other things, tells us that we don't look at the events subsequent to the grant of pro se status. So what date would you like us to focus on in terms of deciding whether or not there was a valid pareto request? What date do you say we should look at? Judge Rawlinson, I think that's exactly where the parties are quarreling. The government comes at it and says there's one specific date, that it's the April date on which the request was granted, and I'm saying no, and I'm respectfully submitting this Court's jurisprudence buttresses my position in saying you look at the entire record before the Court leading to that request. Oh, so you're saying look at everything up to the date of the request, but nothing following the date of the request. Correct. That's what this Court's jurisprudence says. So I, if you will, the government's presenting the Court with a snapshot, and I'm saying the Court respectfully, its jurisprudence tells us it's more like a video clip. So now what case in our case law most strongly supports your argument that we look up to the time of the pareto grant and then no further? What case tells us that? Well, APON tells us no further. But then the government hasn't asked for that, and so therefore I don't believe either has suggested that or cited that to the Court yet. But what case are you relying upon? I'm relying on the cases presented in the opening brief. I believe they're pages 44 through 46. What's your single strongest case on that point? United States v. Garrison, United States v. Mendez-Sanchez, United States v. Erskine, and these were all cited in the opening brief, speaking to the fact that it is the full record of the case. Well, the full record would include what happens after the pareto grant. Except that this Court's jurisprudence specifically tells us not to look beyond that. Well, but I ask you for the case that says that. Are you saying that Garrison says that? No, Garrison doesn't go that far. But APON says that, Your Honor. And as I said, I don't believe either of the parties has provided the Court with a citation. I'm happy to do that if the Court would like. Wait a second. So the main case you're relying upon, APON? No, I'm not. If we go afield, there is case law out there that tells us not to do that. But since I had not requested to incorporate any of the post pareto grant record in the analysis, and the government didn't either, neither of the parties has yet cited that. So the parties are both in agreement that all we look to is the April 22 hearing? As far as the briefing, where it seems to me, and of course government counsel may disagree, but my view of the briefing is we're in agreement that the inquiry must stop there. The government says it's just the April hearing, and I'm saying no, it's including the April hearing. And since it is the burden on the government to justify the waiver, with that, I'm going to reserve my remaining time and allow the government to try to do so. You may do so. Thank you. Good morning, Your Honors. May it please the Court, Martinez, Chott on behalf of the United States. Your Honors, there is absolutely nothing in the record that demonstrates Judge Representation to be unequivocal. The Court addressed this issue about looking at part of the record, a snapshot of the record. There's no dispute on the government's part that you look at the entire record. And I'm aware of no case that says you only look at a particular portion of the record, only up to the waiver, and then don't look at the portion after. In the government's view, looking at the entirety of the record, what you have was a defendant who was very persistent in his demands that his requests from his counsel should be respected and that his demand for pro se should be respected. He continually pushed the district court. And what you see from the record is a district court that was very concerned about this defendant. In the district court's word, the district court was concerned that he was trying to game the system, essentially build air into the proceedings. And because of that, what you'll see from the record is a district court who is essentially arguing with this defendant to not waive his right to counsel, essentially bending over backwards for this particular defendant. He had three attorneys in an eight- to nine-month period. What about the fact that the court itself vacillated? I mean, even during the April hearing, she says, based on all the prior communications and especially the April 9th letter, the court finds that Mr. Berry has not unequivocally waived his right to counsel. And then she says, indeed, everything he has said and the tone and demeanor with which he has said it convinces the court that he does want counsel. I mean, she makes that finding. I mean, it's almost like she's being equivocal. In the government's view, she's not equivocal. In fact, she really wants this defendant to not waive his right to counsel. She's pushing him over and over again to not make that mistake. She says repeatedly throughout the record, it's a very bad decision, you shouldn't do it. But he's essentially removing the obstacles to self-representation. She relies very heavily on that August 9th letter on the fact that he wants standby counsel. And this court's jurisprudence on that is very clear, that when you request standby counsel, the request can be viewed as equivocal. So she relies on that to say that the waiver is equivocal. But then when we get to the closed-door proceedings, after she argues with him for the majority of the closed-door proceedings to say it's a bad idea, don't waive your right to counsel, he finally says, and it's at government's extra record 40 to 41 where it begins and largely on page 42, where he's stating, I respect the court's view, but I'm very strong in my opinions. He says he, if the attorneys aren't going to do anything, I need to take it upon myself to do something. He states he's very capable of doing it. He says he's drafted three pro se motions. And finally he says, I'm just asking for the opportunity to go pro se. Given the defendant's determination, and this was no emotional outburst, which the court in the past has viewed as being equivocal, this was a very deliberate decision by this defendant. Once the closed-door proceedings are over, the district court engages in a full phoretic colloquy. And at that point, the defendant again says he wants to represent himself. And I think the court is correct in looking at the entirety of the record, because even after that particular hearing in August of 2010 on the eve of the hearing of the trial, excuse me, the district court again says, I want to appoint counsel for you. On August 9th, 2010, there's a status conference in which the district court says, I want to appoint counsel for you. And the defendant rejects that. He says he wants to represent himself. And, of course, we're dealing here with clear error review. And I think that's very important in a situation such as this, where the district court is in the best position to observe this defendant, to see his demeanor, to see how he interacts with not just the court, but also counsel. And she remarks on numerous occasions that he's a very intelligent person. He's a very smart person. The defendant even refers to the fact that his father is a public defender, he is experienced with the legal system, and he believes he knows better than the attorneys who have been provided to him. And the district court, in light of that, essentially gets pushed to the point where she can no longer reject his request for self-representation. And, of course ‑‑ But then how do ‑‑ just tell me how you explain how, during the same hearing, she can find it equivocal and then find it unequivocal. In the same hearing, when we have the same, you know, factual circumstances are right there. Yes. I think what happens is that August 9th ‑‑ excuse me, April 9th, 2010 letter is sent to her. And that letter she had problems with because it was ‑‑ he said, in light of the fact that my counsel won't cooperate with me, I have no choice but to represent myself. Correct. And he says, I want to represent myself, but I want standby counsel. So she says, I don't interpret this as being unequivocal. I find it to be equivocal. I'm not going to grant the request based on what you state in this letter. I'm not inclined to grant it. Then she has the closed door proceedings and she goes on to explain to him what a bad idea it is for him to represent himself. Because she's continually telling him not to represent himself. And finally, he, in light of all that, states, I respect your opinion, but I'm very stubborn in my beliefs, I'm very strong in my beliefs, and I want to represent myself. I'm just asking for my opportunity to go pro se. He says that at GER 42. At that point, the district court, you can see from the record, is disappointed. Says, I think it's a very bad decision. If you're asking for standby counsel, I'm still going to find this to be equivocal under the law. At that point, the defendant withdraws that last obstacle. He says, the only reason I wanted standby counsel is for access to discovery and evidence. If that's not an issue, then I withdraw the request for standby counsel. At that point, the district court says she has no choice. She finds that, and in her words, she actually says that she's... She says, I can't keep you from doing it so long as you say, if you want standby counsel or hybrid counsel, that's not going to happen. And that's at GER 40, excuse me, 26. 43 of the record. The defendant then withdraws his request for standby counsel. And the district court says, all right, well, unfortunately, I think it's an incredibly bad decision, but I will call in government counsel who will try to find the other government attorney and go through the FRED waivers and see where we come out. She then engages on the record on a full FRED-a-colic week, and he again states that he wants to represent himself. Under those circumstances, under this court's jurisprudence, the district court had no choice but to accept the waiver. And, in fact, most of the decisions on this topic which the government has cited, the Arlt case, Hernandez, Adams, all deal with reversals of a district court for forcing a defendant to have counsel when he's made an unequivocal request, even when that request is conditional. And what we have here is, at most, a conditional request for a conditional waiver of counsel, where he says that the attorneys aren't going to do this for me, I'd like to represent myself. Under the Hernandez case, this court had no choice at that point but to accept his waiver. Unless the court has any further questions, the government would ask that the court affirm the district court's decision. All right. Thank you, counsel. Thank you. If I may, Your Honors, it does seem from government counsel's argument that we have just now entered new waters. Government, as I understand it, has just argued that, indeed, beyond the moment where the court grants the request, what transpires is relevant to the analysis, and respectfully, I submit that's not true. That's not an accurate statement of this court's case law. So I'd ask the court to consider allowing the parties to submit letter briefs on that specific issue in light of the court's questions as well as the government's argument. Well, what exactly is it that you don't want us to consider? It is my – it's not a matter of what I personally do or don't want, Your Honors. No, I mean that you say under the law. It's my understanding of the case law that as of the point in time that his request to go pro se was granted by the court, the subsequent behavior, the subsequent events are irrelevant to that particular point, to the validity of that decision, of the legality of the waiver and the court's action. And you rely on APONG for that? There are a multitude of cases, and I'd be more comfortable because it wasn't briefed. I didn't present it in my brief. Government counsel didn't argue it in the answering brief. Therefore, I didn't present a reply brief. Well, it's a question of law, so we could easily determine what the law is on that. Correct. Yes, Your Honor. So it may be that the court doesn't need the letter brief, but I do object. What would be helpful is if you would just, you know, fill out one of those forms and just cite the cases you want us to consider. I'd be delighted to do so. I can have it to the court by any means before the end of the day if the court would like. Okay, so you can submit it to the clerk. A Rule 28J letter. Am I going to send it? No. Just – what are those sheets you have? The gum sheets. The gum sheets where you just write, cite the cases. I'd be glad to do so. Okay. And get into opposing counsel, of course. Absolutely. Otherwise, unless the court has questions. Let me go back. Yes, Your Honor. You say he was competent. I believe he's mentally impaired, but I do believe he – the record shows us that he is competent. All right. But I do draw a distinction. What relevance is Dr. Ferristein's testimony that he was bipolar? No, Dr. Ferristein believes that he was not bipolar. But respectfully, I have to say that our record shows that Dr. Ferristein – That he failed to note that Mr. Ferri – He failed to detect it. Suffers from bipolar disorder. If you can see that he was competent, what relevance is that? The district court herself, the district judge herself, comments through the record about how the defendant's behavior is erratic, is inconsistent, and at one point that although she thought he was fine to handle himself, maybe he isn't. The record shows us that the first trial lawyer, the deputy federal public defender initially assigned, her supervisor, and the chief deputy, all based on lengthy interactions, not an individual single instance, but on lengthy interactions with the defendant, had concluded that he had some sort of a mental illness afoot. And this information was told to the district court early on. And indeed, the district judge herself ultimately comes to realize there probably is something here. And I suggest to the court, he may be competent, but this is the explanation for why his behavior is so erratic, and why the district judge in particular, who from December until April, had multiple interactions with him, many in chambers as well as in open court, had ample reason to observe him, and she began to realize this is an individual who does suffer some sort of impairment. All right. Thank you. Counselor, may I just ask you, if we accept your view of what our law is, what evidence in the record would we exclude from our consideration? Just anything that happens beyond the April, the date on which the court granted the Feretta Pro Se status. Which is the April 22nd date. April 22nd, yes, Your Honor. Thank you. For that purpose, the rest of the record is irrelevant there. Thank you. All right. Thank you, Counsel. U.S. v. Berry will be submitted, and we'll take up the next case.
judges: Nelson, Wardlaw, Rawlinson